UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MIGUEL HERNANDEZ and JASON SCHOEN**, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>**ADIDAS AMERICA, INC.,**<br><br>*Defendant*. | Case No.<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs Miguel Hernandez and Jason Schoen ("Plaintiffs") bring this Class Action Complaint individually and on behalf of all others similarly situated, against Defendant Adidas America Inc., ("Defendant" or "Adidas"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to each Plaintiff, which are alleged upon personal knowledge.

## PARTIES, JURISDICTION & VENUE

1.    Plaintiff Miguel Hernandez is a resident citizen of Queens, New York. Plaintiff has purchased goods from Adidas that were imported from countries subject to tariffs imposed under the International Emergency Economic Powers Act ("IEEPA"). The purchase price for the goods that Plaintiff Hernandez purchased from Adidas was increased to account for the tariffs imposed on those products. Plaintiff Hernandez would not have paid the increased price if Adidas had not passed the cost of the IEEPA tariffs on to consumers.

2.      Plaintiff Jason Schoen is a resident citizen of Champlin, Minnesota. Plaintiff has purchased goods from Adidas that were imported from countries subject to tariffs imposed under the International Emergency Economic Powers Act ("IEEPA"). The purchase price for the goods that Plaintiff Schoen purchased from Adidas was increased to account for the tariffs imposed on those products. Plaintiff Schoen would not have paid the increased price if Adidas had not passed the cost of the IEEPA tariffs on to consumers.

3.      Defendant, Adidas America Inc., is an Oregon corporation with its principal place of business located at 5055 North Greeley Avenue, Portland, Oregon 97217. Defendant may be served via its registered agent, United Agent Group Inc., at 7185 SW Sandburg Street, Suite 110, Portland, Oregon 97223. Defendant is a subsidiary of, and the North American headquarters for, Adidas AG a German sporting-goods company based in Herzogenaurach, Germany.

4.      Defendant, Adidas America Inc., is responsible for the marketing, distribution, and sale of Adidas AG's shoes, apparel, and accessories for men, women, boys, girls, infants, and toddlers. A substantial portion of Adidas' products are imported goods subject to IEEPA tariffs imposed by the United States government.

5.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. At least one class member and Defendant are citizens of different states. And there are over 100 putative Class Members.

6.      This Court has personal jurisdiction over Defendant because it's a global company and Defendant regularly conducts business in this District, and the events, acts, and omissions giving rise to Plaintiff's claims occurred in this District.

7.      Venue is proper in this Court because a substantial part of the events, acts, and

2

omissions giving rise to Plaintiffs' claims occurred in this District.

## FACTUAL ALLEGATIONS

8. Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

9. Defendant is the United States subsidiary of Adidas AG, a German multinational corporation founded in 1949 by Adolf "Adi" Dassler in Herzogenaurach, Germany. Adidas AG is one of the world's largest sportswear manufacturers and has operated in the United States market for decades through Adidas America Inc.

10. Defendant serves as the primary distribution and marketing entity for Adidas products in the United States market. Defendant offers a diverse range of athletic and lifestyle products including footwear, apparel, equipment and accessories.

11. Defendant's products sold in the United States are manufactured primarily through a global network of independent third-party suppliers and contract manufacturers.[1] The majority of Defendant's products are manufactured in Asia, with significant production occurring in China, Vietnam, Indonesia, and Cambodia.[2]

12. The vast majority of Defendant's products sold in the United States are imported. Overall, 97% of the company's footwear production and 91% of its apparel production takes place in Asia.[3]

13. Upon information and belief, between June 2024 and May 2025 there were 68,799 Adidas import shipments from China to the United States.[4]

---

[1] Adidas, Annual Report 2023, available at: https://report.adidas-group.com/2023/en/group-management-report-our-company/global-operations.html
[2] *Id.*
[3] *Id.*
[4] Volza, Adidas Imports in United States 2026, available at: https://www.volza.com/p/adidas/import/import-in-united-states/

14.    In or around February 2025, President Donald Trump invoked the IEEPA to impose sweeping tariffs on imports from China, Canada, and Mexico, primarily targeting drug trafficking and illegal immigration. He later expanded these IEEPA-based tariffs to many other nations to combat trade deficits. Based on this declaration, President Trump invoked IEEPA to announce tariffs of at least 10% on imports from almost all U.S. trading partners.[5] Some reported rates reached 30% (20% IEEPA tariff and 10% country-specific tariff) on all Chinese goods.

15.    Under U.S. customs law, Importers of Record (IOR) are responsible for paying tariffs when goods enter the United States. Accordingly, Defendant, as the IOR for Adidas goods, was required to pay the IEEPA tariffs to U.S. Customs and Border Protection upon entry of covered merchandise into the United States.

16.    The IEEPA tariffs sharply increased the cost of importing consumer goods into the United States, especially for retailers like Defendant that depend on global supply chains.

17.    For instance, Adidas chief executive Bjorn Gulden, publicly acknowledged that Defendant had paid, at least, €200m (roughly $233m) in tariffs and that Defendant would "raise prices for American customers"[6] as a result of the tariffs.

18.    On February 20, 2026, the Supreme Court of the United States held that IEEPA does not authorize the President to impose tariffs and that such tariffs were unlawful and imposed without statutory authority. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026). This ruling not only invalidated tariffs imposed under the International Emergency Economic Powers Act, but it also prompted the U.S. Court of International Trade to recognize that importers of record are entitled to refunds of duties paid under the unlawful tariff regime.

---

[5] Supreme Court Rules Against Tariffs Imposed Under the International Emergency Economic Powers Act (IEEPA). (2026, April 29). Available at: https://www.congress.gov/crs-product/LSB11398
[6] Adidas to raise prices as US tariffs costs rise by €200m, BBC, available at: https://www.bbc.com/news/articles/cjey0zv1pkqo

19.     Unfortunately, the cost of IEEPA tariffs was passed onto Plaintiff and Class Members through higher prices paid for Adidas brand goods. For example, the price of certain Adidas branded shoes rose from $90 to $100 as a result of the tariffs.[7]

20.     Defendant has retained the increased amount paid by Plaintiffs and Class Members despite being eligible for a refund of the cost of the unlawful tariffs. Defendant has not indicated any plans to return tariff refunds to customers who paid higher prices.

21.     Plaintiffs and Class Members paid tariff-inflated prices to Defendant, but Defendant now seeks to retain both the consumer pass-through and any government refund of the same unlawful tariff charges.

22.     Despite lacking lawful authority, Defendant charged, collected, and retained tariff-related fees from Plaintiffs and Class Members via its increased prices.

23.     Defendant was not authorized by contract, statute, or law to charge or retain unlawful tariff-related fees.

24.     Defendant's conduct breached its contracts (express or implied) with Plaintiffs and Class Members and violated the fundamental obligation of good faith and fair dealing inherent in those agreements.

25.     Defendant was unjustly enriched by collecting and retaining money to which it was not legally entitled.

26.     Plaintiffs and Class Members suffered economic injury as a direct result of Defendant's conduct, including payment of unlawful tariff-related charges and associated fees via increased prices for Defendant's goods.

---

[7] We Asked 19 Companies if They Planned to Give Customers Tariff Refunds. Only 3 Replied, Money, Apr. 22, 2026, available at: https://money.com/companies-giving-tariff-refunds/#:~:text=As%20companies%20seek%20billions%20of,pursuing%20tariff%20refunds%20at%20all.

27.    On, or about, June 23, 2025, Plaintiff Schoen paid $50.00 for an Adidas branded shoe. Upon information and belief, the price Plaintiff paid for that shoe was higher due to Defendant passing on the cost of IEEPA tariffs.

28.    On, or about, January 31, 2026, Plaintiff Schoen paid $26.00 for another Adidas branded shoe. Upon information and belief, the price Plaintiff paid for that shoe was higher due to Defendant passing on the cost of IEEPA tariffs.

29.    On, or about, January 23, 2026, Plaintiff Hernandez paid $74.99 for an Adidas branded shoe.  Upon information and belief, the price Plaintiff paid for that shoe was higher due to Defendant passing on the cost of IEEPA tariffs.

30.    Defendant's conduct was uniform and systematic, affecting thousands of customers nationwide, and was carried out pursuant to standardized policies, practices, and contractual terms. Plaintiffs and Class Members were deceived by Defendant's conduct, which created a material mistake of fact and/or law and caused Plaintiffs and Class Members to pay higher prices than they ordinarily would have paid or otherwise deprived them of a choice of whether to make the payment.

31.    As a direct and proximate result of paying the unlawful tariffs, Plaintiffs and Class Members suffered financial injury.

32.    Plaintiffs bring this action individually and on behalf of all similarly situated persons to recover damages, restitution, disgorgement, and equitable relief arising from Defendant's unlawful conduct.

33.    Absent relief from this Court, Defendant will continue to retain funds obtained through unlawful pass-through charges.

6

34.     Defendant is among the largest importers of consumer goods and therefore stands to recover roughly $233 million in tariff refunds.   Those expected refunds are especially significant here because Adidas previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning Defendant will recover duties whose economic burden was borne, in whole or in part, by Plaintiffs and Class Members.

## CLASS ALLEGATIONS

35.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

36.     Plaintiffs bring this class action on behalf of themselves and on behalf of all others similarly situated, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3). The class Plaintiffs seek to represent can be defined as:

> **Nationwide Class**: All persons in the United States who, within the applicable statute of limitations period, purchased goods from Defendant and paid higher prices for those goods as a result of tariffs imposed on Defendant pursuant to the International Emergency Economic Powers Act who have not been refunded the imposed tariffs nor any applicable processing fees imposed upon them for collecting the tariffs (the "Class" or "Class Members").

37.     Specifically excluded from the Class are Defendant, its officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, principals, servants, partners, joint venturers, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or its officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

38.     Plaintiffs reserve the right to amend the Class definitions above if further investigation and/or discovery reveals that the Class should be expanded, narrowed, divided into subclasses, or otherwise modified in any way.

39. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements therein.

40. Numerosity: The Class is so numerous that joinder of all Class Members is impracticable. Although the precise number of such persons is unknown, and the facts are presently within the sole knowledge of Defendant, upon information and belief, Plaintiffs estimate that the Class is comprised of thousands of Class Members, if not more. The Class is sufficiently numerous to warrant certification.

41. Typicality of Claims: Plaintiffs' claims are typical of those of other Class Members because Plaintiffs, like the unnamed Class, purchased goods from Defendant that were subject to IEEPA tariff related price increases. The harm suffered by Plaintiffs is similar to that suffered by all other Class Members which was caused by the same misconduct by Defendant.

42. Adequacy of Representation: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have no interest antagonistic to, nor in conflict with, the Class. Plaintiffs have retained competent counsel who are experienced in consumer and commercial class action litigation and who will prosecute this action vigorously.

43. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, Defendant will likely continue its wrongful conduct, will unjustly retain improperly obtained revenues, or will otherwise escape liability for its wrongdoing as asserted herein.

44.    Predominant Common Questions: The claims of all Class Members present common questions of law or fact, which predominate over any questions affecting only individual Class Members, including, but not limited to:

a.    Whether Defendant engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein;

b.    Whether Defendant's conduct was unlawful, or otherwise actionable under applicable federal and state law;

c.    Whether Defendant breached duties owed to Plaintiffs and Class Members;

d.    Whether Defendant passed tariff costs onto its customers by paying duties at customs and then increasing the retail prices on goods sold;

e.    Whether Defendant included additional processing or brokerage fees above and beyond the amount of the tariff costs;

f.    Whether Defendant's conduct caused injury to Plaintiffs and Class Members;

g.    Whether Defendant was unjustly enriched; and

h.    The nature of relief, including damages and equitable relief, to which Plaintiffs and Class Members are entitled.

45.    These common questions are capable of class wide resolution because they arise from Defendant's uniform conduct and do not depend on individualized proof. The determination of these issues will resolve central aspects of Defendant's liability in a single adjudication and will materially advance the resolution of this litigation.

46.    Plaintiffs know of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

47.    The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications and establish incompatible standards of conduct for Defendant. Prosecution as a class action will eliminate the possibility of repetitious and inefficient litigation.

## CAUSES OF ACTION
## COUNT I: UNJUST ENRICHMENT

48.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

49.     Plaintiffs and Class Members conferred a direct financial benefit upon Defendant by paying tariff-related charges in the form of increased prices on goods.

50.     Defendant knowingly received and accepted these benefits.

51.     The tariff-related price increases that Defendant imposed and collected were unlawful and unauthorized.

52.     Defendant collected and retained funds to which it was not legally entitled.

53.     Defendant retained these funds despite knowing, or having reason to know, that such charges were unlawful, invalid, or subject to refund.

54.     It would be inequitable and unjust for Defendant to retain these funds.

55.     Plaintiffs and Class Members suffered economic injury as a result of Defendant's unjust retention of these funds.

56.     Defendant was unjustly enriched at the expense of Plaintiffs and Class Members.

57.     Equity and good conscience require that Defendant disgorge all unlawfully obtained funds and make restitution to Plaintiffs and Class members.


## COUNT II: DECLARATORY JUDGMENT

58.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

59.     In, or around, April 2025, U.S. Customs and Border Protection debuted a tariff refund claims portal where Importers of Record, like Defendant, can submit a declaration for the tariffs they paid under the IEEPA and receive a consolidated refund amount.

60.     Defendant has filed, or will file, a claim alleging it has suffered injury from having to pay IEEPA duties to the United States and requesting a full refund of what it paid for IEEPA tariffs.  However, Defendant passed the cost of the IEEPA tariffs onto consumers like Plaintiffs and Class Members.

61.     Despite the IEEPA tariffs being declared illegal, Defendant has not established a refund process for Plaintiffs and Class Members.

62.     As a direct and proximate result of the Defendant's conduct, Plaintiffs and Class Members suffered damages.

63.     In light of the foregoing, a substantial controversy exists between the parties, having adverse legal interests, of sufficient immediacy and reality to warrant a declaratory judgment.

64.     Under the Declaratory Judgment Act, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further relief as necessary.

65.     Accordingly, Plaintiffs and Class Members are entitled to a declaration that any contract, agreement or other arrangement that permitted Defendant to collect funds from Plaintiffs and Class Members for IEEPA tariff related charges is rescinded and void *ab initio*.

66.     Plaintiffs and Class Members are also entitled to a declaration that either: (i) any refund Defendant obtains from the U.S. government/ U.S. Customs and Border Protection for IEEPA tariffs must be returned to Plaintiffs and Class Members; or (ii) any amount that Defendant

11

charged to and collected from Plaintiffs and Class Members for IEEPA tariffs and related fees must be returned to Plaintiffs and Class Members.

### COUNT III: VIOLATION OF UNLAWFUL TRADE PRACTICES ACT

67.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

68.    Defendant, an Oregon Corporation, engaged in conduct prohibited under the Oregon Unlawful Trade Practices Act (UTPA) ORS §646.608, which includes, but is not limited to, making false or misleading representations about goods or services.

69.    Defendant violated ORS §646.608(1)(s) by making false or misleading representations of fact concerning the offering price of its goods. Defendant unlawfully represented the price of its goods by passing through unlawful IEEPA tariff costs, failing to disclose that it intended to seek tariff refunds, and failing to establish a process to return the tariff related costs that it passed on to consumers.

70.    Plaintiffs and Class Members paid tariff-related charges in the form of increased prices on goods. On February 20, 2026, the Supreme Court of the United States held that IEEPA does not authorize the President to impose tariffs and that such tariffs were unlawful and imposed without statutory authority. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

71.    Despite the IEEPA tariffs being declared illegal, Defendant has not established a refund process for Plaintiffs and Class Members.

72.    As a result, Plaintiffs and Class Members have suffered an ascertainable loss of money because of Defendant's willful use or employment of a practice declared unlawful.

12

73.    Defendant's unfair conduct proximately caused Plaintiffs and Class Members' injury because, but for the challenged conduct, Plaintiffs and Class Members would not have paid increased prices for goods subject to illegal tariffs that Defendant seeks to recover.

74.    This action is being brought within one year of discovering Defendant's unlawful trade practice.

75.    Plaintiffs and Class Members are "persons" that have sustained an ascertainable loss of money as a result of Defendant's reckless or knowing employment of a practice declared unlawful by the UTPA and seek to recover damages, equitable relief, attorneys' fees and costs as a result of Defendant's unlawful conduct.

**COUNT IV: COMMON COUNT OF GENERAL ASSUMPSIT (MONEY HAD AND RECEIVED)**

76.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth in the foregoing paragraphs as though fully set forth herein.

77.    Plaintiffs and Class Members paid IEEPA tariff-related charges to Defendant in the form of increased prices on goods.

78.    On February 20, 2026, the Supreme Court of the United States held that IEEPA does not authorize the President to impose tariffs and that such tariffs were unlawful and imposed without statutory authority. *Learning Resources, Inc. v. Trump*, 607 U.S. ___ (2026).

79.    Despite the IEEPA tariffs being declared illegal, Defendant has not established a refund process for Plaintiffs and Class Members.

80.    It would offend the principles of equity and good conscience if Defendant is allowed to retain the tariff related money it received from Plaintiffs and Class Members.

81.    Under the circumstances, Defendant is not entitled to retain the money to which Plaintiffs and Class Members assert a claim. Accordingly, Plaintiffs and Class Members seek

13

return of the money paid as damages, in an amount to be determined at trial, in addition to attorney's fees, costs, and all other relief the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

    (a)    For an order determining that this action is properly brought as a class action and certifying Plaintiffs as representatives of the Class and their counsel as Class Counsel;

    (b)    For an order declaring that Defendant's conduct violates the causes of action referenced herein;

    (c)    For an order declaring that Defendant is obligated to reimburse Plaintiffs and Class Members for any and all sums paid in connection with unlawful tariffs;

    (d)    For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

    (e)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

    (f)    For pre-judgment interest on all amounts awarded;

    (g)    For an order of restitution and all other forms of equitable monetary relief;

    (h)    For injunctive relief as pleaded or as the Court may deem proper;

    (i)    For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

    (j)    Such other and further relief as the Court deems necessary and appropriate.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims in this Class Action Complaint so triable.

Dated: May 12, 2026.                Respectfully Submitted,

14

*/s/ Michael A. Tompkins*
Michael A. Tompkins, Esq.
Jeffrey K. Brown, Esq.
**LEEDS BROWN LAW, P.C.**
1 County Road, Suite 347
Carle Place, NY 11514
Tel: 516-873-9550
Fax: 516-747-5024
mtompkins@leedsbrownlaw.com
jbrown@leedsbrownlaw.com


Paul J. Doolittle, Esq.[*]
**POULIN | WILLEY| ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
paul.doolittle@poulinwilley.com
cmad@poulinwilley.com
*\*Pro Hac Vice* forthcoming

*Attorneys for Plaintiffs and Proposed Class*

15