UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIGUEL HERNANDEZ and JASON SCHOEN, individually and on behalf of others similarly situated<br><br>Plaintiffs,<br><br>- against -<br><br>ADIDAS AMERICA, INC.,<br><br>Defendant. | **Case No.:** 26-cv-02848-ENV-MMH |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**LEEDS BROWN LAW, P.C.**
Anthony M. Alesandro, Esq.
Michael A. Tompkins, Esq
134 Mineola Blvd, Floor 2
Mineola, NY 11501
Tel: 516-873-9550
Fax: 516-747-5024
mtompkins@leedsbrownlaw.com
aalesandro@leedsbrownlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ ii

TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. Plaintiffs Have Standing to Pursue Their Claims Against Defendant ........ 2

II. Plaintiffs State a Claim Under the Oregon Unlawful Trade Practices Act ........ 4

a. Adidas's Posted-Price Defense Does Not Defeat a Tariff Pass-Through and Price-Premium Theory ........ 5
b. Rule 9(b), Even if Applicable, is Satisfied ........ 6
c. Plaintiffs' Omission Theory Does Not Depend on a Duty to Predict the Supreme Court ........ 7
d. Willfulness is Adequately Pleaded ........ 7
e. Plaintiffs Adequately Plead Causation ........ 8
f. Plaintiffs Plead Ascertainable Loss ........ 9
g. The Voluntary-Payment Doctrine does not Bar the Oregon UTPA Claim at the Pleading Stage ........ 10

III. Plaintiffs Have Asserted Viable Claims Under New York General Business Law ("NYGBL") § 349) ........ 10

a. Plaintiffs Have Alleged Deceptive and Misleading Acts by Defendant ........ 10
b. Plaintiffs Have Alleged Causation ........ 12
c. Plaintiffs Have Alleged That They Suffered a Recoverable Injury ........ 13

IV. Plaintiffs Have Adequately Alleged a Claim for Unjust Enrichment ........ 14

V. Common Law Count of General Assumpit (Money Had and Received) ........ 17

VI. Declaratory Judgment ........ 18

VII. Voluntary Payment Doctrine ........ 18

CONCLUSION ........ 23

CERTIFICATE OF WORD COUNT ........ 25

**TABLE OF AUTHORITIES**

*Ackerman v. Coca-Cola Co., No. CV-09-0395 (JG) (RML)*,
2010 WL 2925955 (E.D.N.Y. July 21, 2010) ....................14

*Adamson v. WorldCom Commc'ns, Inc.*,
190 Or. App. 215–27, 78 P.3d 577–85 (2003) ....................8

*Alaska Elec. Pension Fund v. Bank of Am, Corp.*,
306 F. Supp. 3d 610 (S.D.N.Y. Feb. 2, 2018) ....................16

*BLT Steak LLC v. Liberty Power Corp., LLC*,
172 A.D.3d 458–59 (1st Dep't 2019) ....................20, 22

*Bowring v. Sapporo U.S.A., Inc.*,
234 F. Supp. 3d 386 (E.D.N.Y. 2017) ....................11

*Bristol Vill., Inc. v. Louisiana-Pacific Corp.*,
916 F. Supp. 2d 357 (W.D.N.Y. Dec. 31, 2012) ....................16

*Colpitts v. Blue Diamond Growers*,
527 F. Supp. 3d 562 (S.D.N.Y. 2021) ....................3, 14

*Columbia Mem'l Hosp. v. Hinds*,
192 N.E.3d 1128 (N.Y. 2022) ....................15

*Cooper v. Anheuser-Busch, LLC*,
553 F. Supp. 3d 83 (S.D.N.Y. 2021) ....................12

*Cox v. Microsoft Corp.*,
8 A.D.3d 39 (1st Dept. 2004) ....................15

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
100 N.Y.2d 525 (2003) ....................18, 21, 22

*DRMAK Realty LLC v. Progressive Credit Union*,
133 A.D.3d 401 (1st Dep't 2015) ....................22

*Dodona I, LLC v. Goldman, Sachs & Co.*,
847 F. Supp. 2d 624 (S.D.N.Y. 2012) ....................16

*Dubrow v. Herman & Beinin*,
157 A.D.3d 620 (1st Dep't 2018) ....................21, 22

*Fishon v. Peloton Interactive, Inc.*,
620 F. Supp. 3d 80–06 (S.D.N.Y. 2022) ....................20, 23

*Goel v. Ramachandran*,
111 A.D. 3d 783 (2d Dept. 2013) ....................18

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ....................13

*Hughes v. Ester C Co.*,
930 F. Supp. 2d 439 (E.D.N.Y. Mar. 15, 2013) ....................16

*In re Evergreen Mut. Funds Fee Litig.*,
423 F. Supp. 2d 249 (S.D.N.Y. 2006) ....................12

*Kane v. Univ. of Rochester*,
2024 U.S. Dist. LEXIS 48515 (W.D.N.Y. Mar. 19, 2024) ....................13

*Learning Resources, Inc. v. Trump*,
607 U.S. 229 (2026) ....................1

*Lebovits v. Bassman*,
120 A.D. 3d 1198 (2d Dept. 2014) ....................16

*Leder v. American Traffic Solutions, Inc.*,
630 F. App'x 61 (2d Cir. 2015) ....................22

*Levy v. Hu Prod. LLC, No. 23 CIV. 1381 (AT)*,
2024 WL 897495 (S.D.N.Y. Mar. 1, 2024) ....................12

*Litvinoff v. Wright*,
150 A.D.3d 714 (2d Dept. 2017) ....................18

*Mancuso v. RFA Brands, LLC*,
454 F. Supp. 3d 197 (W.D.N.Y. 2020) ....................3

*Pearson v. Philip Morris, Inc.*,
358 Or. 88–44, 361 P.3d 3–38 (2015) ....................9

*Raudebaugh v. Action Pest Control, Inc.*,
59 Or. App. 166–72, 650 P.2d 1006–10 (1982) ....................6

*Sanders v. Francis*,
277 Or. 593, 561 P.2d 1003 (1977) ....................5, 8

*Schneider v. Colgate-Palmolive Co.*,
677 F. Supp. 3d 91 (N.D.N.Y. Jun. 15, 2023) ....................17

*Searcy v. Bend Garage Co.*,
286 Or. 11, 592 P.2d 558 (1979) ....................................................................................5

*Spagnola v. Chubb Corp.*,
574 F.3d 64, 73 (2d Cir. 2009). ..............................................................19, 20, 21, 22,23

*Stutman v. Chem. Bank*,
95 N.Y.2d 24 (2000) ........................................................................................................12

*Suarez v. Cal. Nat. Living, Inc.*,
2019 U.S. Dist. LEXIS 34634 *1 (S.D.N.Y. Mar. 4, 2019) .....................................................11

**PRELIMINARY STATEMENT**

Plaintiffs Miguel Hernandez and Jason Schoen on behalf of themselves and the putative class (collectively "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant Adidas America, Inc., ("Adidas" or "Defendant") Motion to Dismiss the Amended Complaint.

Adidas's Motion rests on a fundamental mischaracterization of Plaintiffs' claims. Plaintiffs do not seek a retroactive refund merely because they paid the advertised price for non-defective products. Rather, Plaintiffs allege that Adidas increased prices to pass through costs associated with tariffs imposed under the International Emergency Economic Powers Act ("IEEPA") to U.S. Consumers. In other words, consumers were charged a price premium, and paid more for Adidas products, as a direct result of the IEEPA tariff scheme. After the Supreme Court invalidated those tariffs in *Learning Resources, Inc. v. Trump*, 607 U.S. 229 (2026), Adidas became eligible to recover the tariff amounts it paid while retaining the corresponding price increases already borne by consumers. Plaintiffs challenge Adidas's attempt to retain the price increases, specifically represented as tariff related, and refunds for those costs that they did not bear.

Adidas's arguments should be rejected as the Amended Complaint[1] adequately alleged Plaintiffs' injuries and each of their substantive claims. First, Plaintiffs have adequately alleged Article III standing. They allege a concrete economic injury: they paid higher prices for Adidas products because tariff costs were passed through to consumers and would have paid less absent that tariff-related price premium. That alleged out-of-pocket loss constitutes a cognizable injury at the pleading stage.

[1] References to Plaintiffs Amended Complaint filed as Dkt. 14 are referred to herein as AC.

Second, Plaintiffs have stated claims under the Oregon UTPA and New York General Business Law § 349. Those claims are not premised on a defective product or a discrepancy between the advertised and checkout price, but on Adidas's tariff-pricing conduct and its failure to disclose that it would retain the consumer-funded price increases even if it recovered the corresponding tariff costs. Whether that conduct was deceptive, the extent to which tariff costs were incorporated into consumer prices, and the resulting price premium present factual questions cannot be resolved on a motion to dismiss.

Third, Plaintiffs adequately plead their equitable claims. Adidas cannot defeat unjust enrichment merely because Plaintiffs purchased Adidas products through third-party retailers where Plaintiffs allege that Adidas imposed the tariff-related price increases and ultimately benefited from those increases through the distribution chain. Those allegations likewise support Plaintiffs' claim for money had and received and, because Plaintiffs' substantive claims survive, their request for declaratory relief similarly survives.

Finally, the voluntary-payment doctrine does not warrant dismissal. Knowledge of the final retail price is not equivalent to full knowledge of the material facts underlying the tariff-related component of that price. Plaintiffs allege that Adidas possessed and failed to disclose material information concerning its tariff costs, pricing and pass-through practices, refund rights, and intended retention of any tariff recovery. Therefore, at the pleading stage Adidas cannot establish that Plaintiffs had "full knowledge" as required by the voluntary-payment doctrine.

In short, Adidas seeks to resolve disputed factual questions concerning its tariff pricing, pass-through practices, consumer disclosures, and tariff recovery at the pleading stage. Accepting Plaintiffs' well-pleaded allegations as true, the Amended Complaint adequately establishes

standing and states viable statutory, equitable, and declaratory claims. Defendant's Motion to Dismiss should therefore be denied, as further detailed below.

## ARGUMENTS

### I. Plaintiffs Have Standing to Pursue Their Claims Against Defendant

Defendant seeks dismissal of Plaintiffs' claims on the grounds that Plaintiffs lack Article III standing because they have failed to plead an "injury in fact". Specifically, Defendant argues that "Plaintiffs fail to plausibly allege that they suffered any injury. There is no allegation that adidas or anyone else misrepresented the nature, quality, or price of the products they purchased or that the shoes were defective or worth less than represented." Def. Br. at 4[2]. Defendant's argument is both legally and factually baseless.

The law is clear that to meet the legal requirements for Article III standing: "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021) quoting *Nicosia* v. *Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). It is further well established that at the pleading stage, such as this case, these allegations need not be pled with such demanding specificity. As the court in *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 202 (W.D.N.Y. 2020) held:

> At the pleading stage, however, more specific allegations are not necessary for Article III standing. A "quintessential injury-in-fact" can occur when plaintiffs allege that they "spent money that, absent defendant['s] actions, they would not have spent." *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 U.S. Dist. LEXIS 46197 at *16 (N.D. Cal. 2020) (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011)). "And, although [plaintiff] may face an uphill battle in proving [his claims], in confirming its Article III

[2] References to Defendant's Memorandum of Law in Support of Defendant Adidas America, Inc.'s Motion to Dismiss the Amended Complaint are referred to herein as Def. Br..

> jurisdiction at the pleading stage, the Court's task is to evaluate the allegations of injury in fact in [plaintiff's] complaint, not to predict the viability of [his] ultimate claim for damages." *In re Barclays Liquidity Cross & High Frequency Trading Litigation*, 390 F. Supp.3d 432, 445 (S.D.N.Y. 2019).

The Plaintiffs in the Action satisfy the legal requirements for standing under Article III. As alleged in detail Plaintiffs' Complaint, Plaintiffs paid a price premium for the purchase of Adidas products as a result of Defendant's deceptive trade practices. In particular, Defendant increased its prices on products sold to U.S. consumers, such as Plaintiffs, solely based on the IEEPA tariffs. Plaintiffs further allege that they would not have paid the tariff inflated prices, or would have paid less, had Defendant not passed the cost of the IEEPA tariffs on to consumers and retained the tariff-related benefit. AC ¶¶ 1, 2, 18-20. Plaintiffs further alleged that Plaintiffs and Class Members suffered economic injury as a direct result of Defendant's conduct, including payment of unlawful tariff-related price premium due to the unlawfully imposed IEEPA tariffs and its related charges and associated fees. AC ¶¶ 25-27, 30, 72-73, 75. The allegations are more than sufficient to establish Article III standing.

**II. Plaintiffs State a Claim Under the Oregon Unlawful Trade Practices Act**

Adidas mischaracterizes the Amended Complaint as a posted-price or product-defect case. It is neither. Plaintiffs do not allege that Adidas charged a checkout price different from the stated retail price, nor do they allege that the shoes were physically defective. They allege a tariff pass-through and price-premium theory: 1) Adidas paid or bore IEEPA tariff-related costs, 2) publicly tied United States price increases to those tariff costs, 3) incorporated the tariff component into consumer prices for Adidas-branded imported goods, caused Plaintiffs and Class Members to pay higher prices, and 4) Adidas retained (or intends to retain) tariff-related refunds and credits. AC ¶¶ 14, 17–18, 20–33, 69–75. As such, Plaintiffs properly plead a claim under ORS § 646.608(1)(s).

**a. Adidas's Posted-Price Defense does not Defeat a Tariff Pass-Through and Price-Premium Theory**

Adidas argues that there can be no UTPA claim because Plaintiffs paid the stated retail prices and received Adidas shoes. However, Plaintiffs' theory is not a hidden-checkout-price theory; it is a misleading price/cost theory. The Amended Complaint alleges that Adidas incorporated tariff-related costs into prices charged to consumers, publicly stated that tariffs would cause price increases for American customers, and passed tariff costs through as higher prices for Adidas-branded products. AC ¶¶ 14, 17–18, 26–28. It further alleges that Adidas retained the increased amount paid because of the tariff price premium and now seeks to retain both the consumer pass-through and tariff-related refunds or benefits instead of refunding the tariff related price increase back to the consumers. AC ¶¶ 20–24, 32–33, 69–73.

Oregon law does not impose Adidas's categorical rule that a UTPA price claim fails whenever the consumer paid the posted price. ORS § 646.608(2) provides that a representation may be made by words, conduct, or failure to disclose a fact. In *Searcy v. Bend Garage Co.*, 286 Or. 11, 592 P.2d 558 (1979), the Oregon Supreme Court held that conduct and nondisclosure could constitute a representation under the UTPA. *Searcy*, 286 Or. 11, 15–17, 592 P.2d 558, 560–61 (1979). Likewise, in *Sanders v. Francis*, 277 Or. 593, 561 P.2d 1003 (1977), the court recognized that a failure to disclose price-related information can support a UTPA claim and that whether reliance is required depends on the particular unlawful practice alleged. *Sanders*, 277 Or. 593, 598, 561 P.2d 1003, 1006 (1977).

That principle applies here. Plaintiffs allege that Adidas's tariff-pricing conduct represented, expressly or by implication, that the higher prices reflected tariff costs being passed through to consumers, while Adidas failed to disclose that it would retain any tariff-related refunds,

if the tariff basis failed and thus "pocket" the pass-through price premium. AC ¶¶ 17–18, 20–24, 32–33, 69–73.

A representation concerning the tariff component embedded in the consumer price is a representation concerning the offering price and Adidas's cost for the goods. Adidas's reliance on posted-price cases such as *Mendoza* and *Leyden* is therefore misplaced. Def. Br. at 7. Those cases involved ordinary allegations that failed to connect the charged price to a pleaded false or misleading price representation. Here, Plaintiffs plead the missing link: Adidas's retention (or expected retention) of the corresponding tariff-related benefit notwithstanding the tariff's direct impact on pricing. AC ¶¶ 14, 17–18, 20–33, 69–75. The amount of the tariff component, the mechanics of pass-through, and Adidas's refund/offset treatment is a merits issue, not a pleading defect.

**b. Rule 9(b), Even if Applicable, is Satisfied**

Adidas also argues that Rule 9(b) applies. Def. Br. at 6. Plaintiffs need not concede that every Oregon UTPA theory is common-law fraud. Oregon courts caution against importing common-law fraud requirements into the UTPA. *Raudebaugh v. Action Pest Control, Inc.*, 59 Or. App. 166, 171–72, 650 P.2d 1006, 1009–10 (1982). The Act creates a statutory remedy. As such, its elements are those the legislature specified, not the additional common-law elements Adidas seeks to add.

In any event, the Amended Complaint pleads the challenged conduct with sufficient particularity. It identifies the actor: Adidas. It identifies the challenged conduct: Adidas' tariff-cost pricing, its tariff pass-through, its failure to disclose retention of tariff refunds or benefits, and its failure to establish a process to return the tariff-related amounts passed on to consumers. AC ¶¶ 14, 17–18, 20–24, 32–33, 69–73. The Amended Complaint identifies the time and transactions:

Plaintiffs' purchases during the IEEPA tariff period. AC ¶¶ 26–28. And it explains why the conduct was misleading: Plaintiffs paid a tariff-inflated price component that Adidas seeks to retain (or recover again) through refunds, credits, offsets, reimbursements, or other benefits. AC ¶¶ 20–24, 32–33, 69–73

Nothing more is required at the pleading stage. Particularly where the details of Adidas's tariff accounting, pricing decisions, pass-through practices, refund applications, credits, offsets, and reimbursement treatment are uniquely within Adidas's possession.

**c. Plaintiffs' Omission Theory Does Not Depend on a Duty to Predict the Supreme Court**

Adidas reframes the claim as though Plaintiffs allege Adidas had to predict the Supreme Court's later ruling regarding IEEPA tariffs. Def. Br. 8. That is not the theory. Plaintiffs allege that Adidas knew its own tariff costs, pricing decisions, pass-through practices, retail-channel pricing structure, refund rights, accounting treatment, and whether it intended to return or retain tariff-related benefits. AC ¶¶ 14, 17–18, 20–24, 32–33, 69–73. Adidas did not need to predict the Supreme Court to know whether it had built tariff costs into consumer prices; whether consumers bore that economic burden; and whether Adidas had any process or intent to return the consumer-funded tariff component if Adidas recovered or offset the same costs. The decision to retain these ill-gotten price premiums is Adidas' own decision.

**d. Willfulness is Adequately Pleaded**

Adidas's willfulness argument fails for the same reason as it is not based upon "predictability". Def. Br. at 9. Plaintiffs do not allege that Adidas had to know in advance how the Supreme Court would rule. Who could? Instead, Plaintiffs allege that Adidas knew (or should have known) the facts making its tariff-pricing conduct misleading. The crux of the misrepresentation is that Adidas knowingly charged a price premium as a direct result of the IEEPA tariffs and now

seeks to retain all monies refunded to it as a result of those tariff's being found unconstitutional and, in so doing, failed to disclose the tariff burden was ultimately imposed upon consumers without their knowledge. AC ¶¶ 20–24, 32–33, 69–75. In essence, the tariff monies recouped by Adidas and not returned to consumers is an additional and unnecessary cost passed along to consumers who unknowingly paid an undisclosed price premium.

Under Oregon law, willfulness does not require knowledge that the conduct technically violates the UTPA. It is enough that the defendant knew or should have known that its representation was false or misleading. *Adamson v. WorldCom Commc'ns, Inc.*, 190 Or. App. 215, 225–27, 78 P.3d 577, 584–85 (2003). At minimum, Plaintiffs plausibly allege that Adidas knew its own costs, pricing, pass-through, refund, and retention practices. That is sufficient at the pleading stage.

**e. Plaintiffs Adequately Plead Causation**

Adidas next argues that Plaintiffs fail to plead causation because they do not allege that they personally saw or relied on a specific Adidas statement. Def. Br. at 9. However, Oregon law does not impose a universal reliance rule for every UTPA theory. *Sanders* held that whether reliance is required depends on the unlawful practice alleged. 277 Or. at 598, 561 P.2d at 1006. *Bohr v. Tillamook County Creamery Ass'n* confirms that, at the pleading stage, UTPA theories do not necessarily fail merely because they do not depend on every purchaser observing and relying on a particular representation. 373 Or. 343, 348–50, 567 P.3d 413, 416–18 (2025).

Here, Plaintiffs plead causation through the price chain: Adidas paid or bore tariff costs; passed those costs through into consumer prices; Plaintiffs paid higher prices for Adidas-branded goods; and Adidas retained or seeks to retain the corresponding tariff-related benefit. AC ¶¶ 14, 17–18, 20–33, 69–73. Count III specifically alleges that, but for the challenged conduct, Plaintiffs

and Class Members would not have paid increased prices for goods subject to illegal tariffs that Adidas seeks to recover. AC ¶ 73. That is a plausible causation theory. Whether Adidas can later disprove pass-through, price impact, or retention requires discovery.

**f. Plaintiffs Plead Ascertainable Loss**

Adidas's ascertainable-loss argument repeats its posted-price defense and ignores the premise that Plaintiffs seek to recover the price premium they paid for Adidas products related to the increase in pricing due to the imposed IEEPA tariffs when the basis for that price increase was negated by the Supreme Court's *Learning* decision coupled with Adidas' decision to fully retain any tariff refunds owed to it when, in reality, those monies should be refunded to consumer. Def. Br. at 10.

According to Adidas, Plaintiffs did not suffer an economic loss because they received non-defective shoes. This position ignores the overall theory of the Amended Complaint. Oregon law rejects that narrow theory of loss. In *Clark v. Eddie Bauer LLC*, the Oregon Supreme Court held that a consumer can suffer an ascertainable loss from a price-related misrepresentation even when the deception does not concern the product's character or quality. 371 Or. 177, 179–82, 532 P.3d 880, 882–84 (2023). The UTPA focuses on whether the plaintiff suffered a determinable economic loss as a result of the unlawful practice; the statute is not limited to defective-product cases. *Id.* at 196–99, 532 P.3d at 891–93.

*Pearson* likewise explains that the UTPA requires the loss—not necessarily the purchase decision itself—to result from the unlawful practice, and that a plaintiff may establish economic loss by showing that the product's price exceeded its objective market value because of a misrepresentation. *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 143–44, 361 P.3d 3, 37–38 (2015). *Bohr* confirms that price-premium theories can survive pleading-stage attacks, even if proof of the

premium may present later evidentiary questions. 373 Or. at 348–50, 374–79, 567 P.3d at 416–18, 430–33.

Plaintiffs plead precisely that kind of economic injury. They allege that they paid tariff-inflated prices resulting in an economic loss when the basis for the price increase was deemed unconstitutional and the monies they paid because of the tariff were not refunded to them by Adidas who has made a claim for a refund of the tariff monies they paid and, in essence collected, from consumers. AC ¶¶ 20–25, 26–33, 70–73.

**g. The Voluntary-Payment Doctrine Does not Bar the Oregon UTPA Claim at the Pleading Stage**

Finally, Adidas's voluntary-payment defense cannot defeat the Oregon UTPA claim on the pleadings. Even under Adidas's formulation, the doctrine applies only where payment was made with full knowledge of the relevant facts and without fraud, mistake, duress, or coercion. Plaintiffs plead the opposite. They allege Adidas's uniform conduct created a material mistake of fact and/or law; caused consumers to pay higher prices than they otherwise would have paid; withheld a policy of hoarding refunded tariffs should such occur and thus deprived plaintiffs of a meaningful choice whether to pay the tariff-related component. AC ¶¶ 29–33, 69–75.

Simply put, Adidas controlled the information concerning its tariff payments, tariff accounting, pass-through decisions, pricing practices, refund applications, and retention of tariff-related benefits. AC ¶¶ 14, 17–18, 20–24, 32–33, 69–73. At minimum, the defense cannot be resolved from the pleadings in a case alleging deceptive pricing, omission, mistake, and lack of full knowledge of facts uniquely within Adidas's control.

For these reasons, Adidas's motion to dismiss the Oregon UTPA claim should be denied.

## III. Plaintiffs Have Asserted Viable Claims Under New York General Business Law ("NYGBL") § 349

**a. Plaintiffs Have Alleged Deceptive and Misleading Acts by Defendant**

To establish a prima facie claim under GBL § 349 or § 350, a plaintiff must plausibly allege "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Suarez v. Cal. Nat. Living, Inc.*, 2019 U.S. Dist. LEXIS 34634 *1, *17 (S.D.N.Y. Mar. 4, 2019) (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). A defendant's conduct is materially misleading if it "would mislead 'a reasonable consumer acting reasonably under the circumstances.'" *Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390 (E.D.N.Y. 2017) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). The determination as to whether conduct is materially misleading is an "objective inquiry" that is "typically unsuited to resolution at the pleading stage." *Suarez*, 2019 U.S. Dist. LEXIS 34634 at *17 (citing *Bowring*, 234 F. Supp 3d at 390).

Defendant argues that Plaintiffs GBL claims fail because Plaintiffs have failed to allege "an actionable misrepresentation". Def. Br. at 11. Yet, as Defendant acknowledges Defendant increased the cost of its imported goods based on the sole fact that "it had incurred at least €200 million in IEEPA tariffs and expected to increase prices as a result." *Id.* (They allege that the tariffs "increased the cost of importing consumer goods" for companies like Adidas, and that the "cost of IEEPA tariffs was passed on . . . through higher prices paid for [a]didas-branded goods. (AC ¶¶ 16, 18.)". While Defendant claims that the statements alleged in the Complaint are true, Plaintiffs allege that Defendant's conduct was deceptive and materially misleading "because Adidas caused consumers to pay tariff-inflated prices while failing to disclose that Adidas would retain any tariff-related refund, credit, offset, reimbursement, or other benefit if the legal basis for those tariffs failed or if Adidas recovered all or part of the tariff amounts whose economic burden had been passed through to consumers." AC ¶ 91.

Under Sections 349 and 350, "[o]missions, as well as acts, may form the basis of a deceptive practices claim." *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 264 (S.D.N.Y. 2006); *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000). Of course, whether an alleged misstatement or omission is deceptive is a question of fact, an inquiry "not suited for resolution at the motion to dismiss stage." *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 96 (S.D.N.Y. 2021) (collecting cases). Thus, "[a]t this stage of the case..., such a determination is appropriate only if Plaintiffs' claims are 'patently implausible' or 'unrealistic.'" *Id*. at 95 (citing *Eidelman v. Sun Prods. Corp.*, case no. 16-cv-3914 (NSR), 2017 WL 4277187, at *4). Here, the Court should decline Defendant's invitation to decide this underlying factual question, as a matter of law, until a fuller record is developed. See *Levy v. Hu Prod. LLC*, No. 23 CIV. 1381 (AT), 2024 WL 897495, at *6 (S.D.N.Y. Mar. 1, 2024).

**b. Plaintiffs Have Alleged Causation**

Defendant further argues that Plaintiffs' GBL claims fail because "they do not plausibly allege that they were injured 'injured by *reason* or defendant's deceptive or misleading conduct.'" Def. Br. at 12. Again, Defendant is wrong. Contrary to Defendant's assertion, Plaintiffs specifically alleged that "Plaintiffs and Class Members suffered economic injury as a direct result of Defendant's conduct, including payment of unlawful tariff-related price premium due to the unlawfully imposed IEEPA tariffs and its related charges and associated fees." AC ¶ 25. See also AC ¶ 30 ("As a direct and proximate result of paying the unlawful tariffs, Plaintiffs and Class Members suffered financial injury"); and AC ¶ 96 (Plaintiffs "suffered actual injury as a direct and proximate result of Adidas's deceptive acts and practices. Their injury includes, but is not limited to, paying a tariff-inflated price premium for Adidas-branded products and losing money or

property in the amount of the tariff-related price component that Adidas passed through to consumers and retained.")

Moreover, the Complaint adequately alleges that the Chief Executive Officer publicly stated that "Adidas paid at least €200 million in tariffs and that Adidas would raise prices for American customers as a result of the tariffs." AC ¶ 87. The Complaint further alleges that "Adidas's public statements and conduct were material to reasonable consumers because Adidas represented, expressly or by implication, that United States price increases for Adidas-branded products reflected real and unavoidable tariff-related import costs being passed through to consumers." Id. ¶ 88. The above allegation is more than adequate to allege causation. "[E]ven without such an express allegation [of reliance], where a plaintiff describes in detail the allegedly misleading and deceptive statements, 'the reasonable inference to be drawn' is that she 'saw the misleading statements, and, as a result of such, purchased the [product] at issue.'" *Kane v. Univ. of Rochester*, 2024 U.S. Dist. LEXIS 48515, at *53-54 (W.D.N.Y. Mar. 19, 2024) (quoting *Dash v. Seagate Tech. (U.S.) Holdings, Inc.*, 27 F. Supp 3d 357, 361 (E.D.N.Y. 2014)); *see also Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (finding causation sufficiently alleged for a GBL § 349 claim based on "[t]he reasonable inference . . . drawn from" plaintiff's description of "the allegedly misleading advertising" and allegation that such advertising "ha[d] already deceived and misled Plaintiff").

**c. Plaintiffs Have Alleged That They Suffered a Recoverable Injury**

Defendant further argues that Plaintiffs GBL claims fail because Plaintiffs "do not plausibly allege that they were injured." Def. Br. at 13. According to Defendant, "Plaintiffs paid the agreed price, received the adidas shoes they sought, and therefore received the full benefit of the bargain." *Id.* However, Defendant completely ignores the allegations in Plaintiffs' Complaint. Contrary to

Defendant's argument, Plaintiffs' allegations that they would not have paid a premium price for the Product had they not been deceived are sufficient under New York law. "An injury under §§ 349 and 350 therefore may be alleged under a price premium theory whereby a plaintiff claims to have paid more for the product than he or she would have if the defendant did not engage in allegedly deceptive practices." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576-77 (S.D.N.Y. 2021); see also *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ("Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations.").

As with the cases cited above, Plaintiffs have adequately alleged that due to Defendant's deceptive acts Plaintiffs suffered an injury because they were charged and paid a price premium to purchase Defendant's products. Specifically, Plaintiffs alleged:

- Despite lacking lawful authority, Defendant charged, collected, and retained tariff-related fees in the form of a price premium that was passed through to consumers such as from Plaintiffs and Class Members via its increased prices.
- Defendant was not authorized by contract, statute, or law to retain monies derived from a price-premium increase attributed to IEEPA's unlawful tariff-related fees.
- Plaintiffs and Class Members suffered economic injury as a direct result of Defendant's conduct, including payment of unlawful tariff-related price premium due to the unlawfully imposed IEEPA tariffs and its related charges and associated fees.

AC ¶¶ 22, 23, 25. These allegations are sufficient to allege an injury under the GBL.

## IV. Plaintiffs Have Adequately Alleged a Claim for Unjust Enrichment

To recover under a theory of unjust enrichment under New York law, a litigant must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered. *Columbia Mem'l Hosp. v. Hinds*, 192 N.E.3d 1128, 1137 (N.Y. 2022). Plaintiffs have stated a claim for unjust enrichment by alleging: (1) the Defendant was enriched by knowingly accepting and retaining the benefits of the tariff related price premiums (AC ¶¶ 24, 40, 50), (2) those benefits were passed through to and paid by consumers like Plaintiffs (*id*. ¶¶ 21, 32, 51), and (3) that it is inequitable and unjust to permit Defendant to retain the full amount of the passed through of the now illegal tariff costs while Defendant receives a full refund of the same. *Id*. ¶¶ 33, 53.

Defendant's primary argument in its motion is that Plaintiffs failed to state a claim for unjust enrichment because Plaintiff did not allege a "specific and direct benefit" to Defendant "because they purchased the shoes from third-party retailers." Def. Brf. 14. However, Defendant is the entity that is responsible for the marketing, distribution, and pricing of its products throughout the country, not third-party retailers. AC ¶ 4. Further, Defendant is the entity that benefited from the increased price premiums placed on its products specifically to cover the costs of the tariffs. AC ¶ 33. Essentially, Defendant's argument is that an indirect purchaser cannot bring a claim for unjust enrichment which is contrary to New York law. See *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 40-41 (1st Dept. 2004) ("the motion court erroneously dismissed plaintiffs' cause of action for unjust enrichment, holding that, as indirect purchasers of Microsoft's software products, plaintiffs only indirectly bestowed a benefit upon Microsoft"). Here, Defendant benefits through the distribution chain by increased prices for the state purpose of covering the cost of the IEEPA tariffs, whether Plaintiffs purchased their products through Defendant directly or through a third-party retailer does not eliminate the fact that Defendant benefited or defeated a claim for unjust

enrichment. *See Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 471 (E.D.N.Y. Mar. 15, 2013) ("Under New York law, unjust enrichment does not require a direct relationship between the parties."); *Dodona I, LLC v. Goldman, Sachs & Co.*, 847 F. Supp. 2d 624, 653 (S.D.N.Y. 2012) ("the fact that [plaintiff] did not purchase the Hudson 1 securities directly from Defendants is not sufficient to defeat an unjust enrichment claim at the motion to dismiss phase…").

The cases Defendant relies upon for this proposition are easily distinguishable. In *Alaska Elec. Pension Fund v. Bank of Am, Corp.*, 306 F. Supp. 3d 610 (S.D.N.Y. Feb. 2, 2018) the court found that the defendant was merely acting as an agent for a different entity in a securities transaction and as an agent the defendant could "not be personally bound by a contract unless there is clear and explicit evidence of the agent's intention to substitute its personal liability for that of its principle." *Id.* at 624. Further the Court in *Alaska* found that the plaintiff failed to establish that the defendant played any role in the transaction. *Id.* at 326. Here, Plaintiffs have specifically alleged the role the Defendant played in the transaction including setting the tariff increases, misrepresenting its intention to retain all tariff charges, and being the ultimate benefactor of those costs that were barred by Plaintiffs. AC ¶¶ 20-24. Similarly, *Lebovits v. Bassman*, 120 A.D. 3d 1198 (2d Dept. 2014) is distinguishable as that case involved separate rental and real estate transactions of a piece of property the plaintiff was leasing a building on. *Id.* at 1198. There, as opposed to the instant matter, was no direct chain of commerce in which the benefit ultimately flowed back to the defendant. Finally, *Bristol Vill., Inc. v. Louisiana-Pacific Corp.*, 916 F. Supp. 2d 357 (W.D.N.Y. Dec. 31, 2012) only stands for the proposition in this context that an indirect purchases relationship is "too attenuated where a plaintiff is an indirect purchaser of an item as part of a larger product." *Id.* at 367. Here, Plaintiffs do not fall into that narrow circumstance as

they purchased exclusively Defendant's product as individual items consisting of the entire transaction. AC ¶¶ 1,2, 26-28.

Further, Defendant's argument that Plaintiffs' unjust enrichment claim is merely duplicative of their fraud claims, similarly fails. Plaintiffs claim for unjust enrichment can survive dismissal of the other claims as an independent harm. Specifically, Defendant argues that Plaintiffs have failed to identify any misrepresentation or omission that substantiates a claim for fraud under the UTPA or NYGBL, because the representation made by Defendant regarding increased tariff related costs are true. Def. Brf. at 11-12. Defendant is wrong as to the fraud claims, but even if the Court was persuaded by Defendant's arguments Plaintiff's claim for unjust enrichment would survive. As Plaintiffs need not prove conduct directed towards consumers as an element of their unjust enrichment claim, but rather that Defendant was enriched by Plaintiffs' payment of tariff inflated prices of which is inequitable to be retained when Defendant received or will receive a refund of those costs that they did not bear. *See Schneider v. Colgate-Palmolive Co.*, 677 F. Supp. 3d 91, 105 (N.D.N.Y. Jun. 15, 2023) (finding plaintiff's unjust enrichment claims was not duplicative as "a claim for violating Section 349 requires proof that a defendant's acts are directed towards consumers, while a claim for unjust enrichment does not.").

## V. Common Law Count of General Assumpsit (Money Had and Received)

Defendant's argument in its motion regarding Plaintiffs fourth count is entirely based upon the predicate that Plaintiffs have failed to state a claim for unjust enrichment. Defendant makes no argument that Plaintiffs have failed to adequately allege a claim for money had and received, instead only arguing "because Plaintiffs unjust enrichment claim fails, so too does their claim for money had a received." Def. Brf. 16. As detailed above, Plaintiffs' have adequately alleged a claim for unjust enrichment to survive a motion to dismiss and therefore, by Defendant's own arguments, Plaintiffs' fourth count should survive.

Furthermore, even if the Court is not persuaded that Plaintiffs' unjust enrichment claim is adequately pled, Plaintiffs have asserted a viable claim for money had and received. "The essential elements of a cause of action for money had and received are (1) the defendant received money belonging to the plaintiff, (2) the defendant benefitted from receipt of the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money. The action depends upon equitable principles in the sense that broad considerations of right, justice and morality apply to it." *Goel v. Ramachandran*, 111 A.D. 3d 783, 790 (2d Dept. 2013) (internal quotations omitted). Here, Plaintiffs allege (1) Adidas received money belonging to Plaintiffs in the form of tariff inflated price premiums (AC ¶¶ 1, 2, 21), (2) that Adidas was the ultimate entity that benefited from Plaintiffs payment of those price premiums (*Id*. ¶¶ 1,2, 22, 49, 50), and (3) that is would be inequitable for Adidas to retain those tariff premiums, paid for entirely by its consumers, while at the same time receiving a refund of those costs from the federal government. *Id.* ¶ 54. *See Litvinoff v. Wright*, 150 A.D.3d 714, 716 (2d Dept. 2017).

## VI. Declaratory Judgment

Defendant asserts that the declaratory judgment claim must be dismissed because it is not an independent cause of action and relies almost entirely on Defendant's proposition that Plaintiffs claims are meritless. Def. Brf. 17. Because Plaintiffs have adequately pleaded their underlying substantive claims under state consumer protection statutes and common law, their request for declaratory relief regarding the disposition of the tariff refunds remains a valid and necessary remedy. *See Supra* § II and III.

## VII. Voluntary Payment Doctrine

Addidas's reliance on the voluntary payment doctrine is misplaced or, at a minimum, premature. The doctrine bars recovery only where a plaintiff made a payment "voluntarily…with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon*

*v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (2003) (citing *Gimbel Bros., Inc. v. Brook Shopping Ctrs., Inc.*, 118 A.D.2d 532, 535 (2d Dept. 1986). Critically, the doctrine is an affirmative defense, and a plaintiff is not required to plead facts in anticipation of it. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 73 (2d Cir. 2009). Accordingly, dismissal at the pleading stage is improper unless the defense is established from the face of the complaint. *See id.*; *Wurtz v. Rawlings Co., LLC*, 2014 U.S. Dist. LEXIS 141869, * 15 (E.D.N.Y. Oct. 3, 2014). Indeed, the Second Circuit has cautioned that even where the doctrine "may ultimately bar" recovery, dismissal is premature where the pleadings do not establish whether the plaintiff knew or should have known the facts giving rise to the challenged payment. *Spagnola*, 574 F.3d at 73.

The Amended Complaint does not establish the factual predicate necessary to invoke that defense. Adidas argues that Plaintiffs acted with "full knowledge of the relevant facts" because they knew the total retail prices of the shoes and voluntarily paid those prices. Def. Brf. at 18. But knowledge of the amount appearing at checkout is not the same as knowledge of the material facts underlying the particular component of that price challenged in this action. Plaintiffs allege that Adidas publicly attributed United States price increases to tariff costs and represented, expressly or by implication, that those increases "reflected real and unavoidable tariff-related import costs being passed through to consumers." AC ¶¶ 87–88. Plaintiffs further allege that Adidas did not disclose that it would retain a tariff-related refund, credit, offset, reimbursement, or other benefit if the legal basis for those tariffs failed, and that reasonable consumers understood the tariff-related increases to reflect mandatory, lawful, and unrecoverable costs—not a price component that Adidas could ultimately recover while retaining the corresponding increase paid by consumers. AC ¶¶ 91, 94. At the pleading stage, those allegations must be accepted as true and the reasonable inferences drawn in Plaintiffs' favor.

That distinction—between knowledge of the amount charged and knowledge of the facts underlying the challenged charge—is dispositive under New York law. In *Spagnola*, the defendant argued that the plaintiff voluntarily paid increased insurance premiums reflected in renewal notices and therefore should have discovered the alleged overcharges. *Spagnola*, 574 F.3d at 72-73. The Second Circuit rejected dismissal because the communications could have misled the plaintiff concerning the basis for those increases and the pleadings did not establish whether he "knew or should have known" the relevant facts. *Id.* at 73. The Court emphasized that the plaintiff was "not required to preemptively plead facts refuting the voluntary payment doctrine." *Id.* The same principle applies here. Whether Plaintiffs knew the final retail price says nothing about whether they knew the material facts concerning the tariff-related component of that price, how that component was calculated and passed through the distribution chain, or Adidas's ability and intention to retain the economic benefit of both the consumer price increase and a corresponding tariff refund.

Federal courts applying New York law have repeatedly refused to apply the doctrine at the pleading stage under analogous circumstances. In *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 105–06 (S.D.N.Y. 2022), Peloton argued that consumers' continued voluntary subscription payments barred their claims. The court rejected that argument because the complaint did not establish that the plaintiffs knew the material facts underlying their claims at the time they paid. Relying on *Spagnola*, the court held that "[w]hether the doctrine will limit the recovery of Plaintiffs for payments made during certain time periods is a question not fit for resolution at this stage of the proceeding." *Id.* at 106. Likewise, in *BLT Steak LLC v. Liberty Power Corp., LLC*, 172 A.D.3d 458, 458–59 (1st Dep't 2019), the First Department rejected the voluntary-payment defense, on a summary judgment motion, because the record did not demonstrate that the plaintiffs possessed

the facts necessary to determine that they were being overcharged through a hidden margin fee. See also *Dubrow v. Herman & Beinin*, 157 A.D.3d 620, 621 (1st Dep't 2018) ("while defendants assert that plaintiff voluntarily made payments to compensate them for their services, they have not established that plaintiff had full knowledge of the relevant facts, such as the number of hours spent by defendants in connection with their representation of him.").

The same defect is particularly apparent here because the Amended Complaint expressly alleges that Plaintiffs did not pay with full knowledge of the circumstances on which their claims depend. Plaintiffs allege that Adidas's conduct "created a material mistake of fact and/or law" and caused consumers to pay higher prices than they otherwise would have paid or deprived them of the choice whether to make the payment at all. AC ¶ 29. Therefore, had Hernandez and the New York Subclass known that Adidas would retain tariff-related refunds or equivalent benefits while consumers bore the economic burden of the tariff-related price increase, they would not have purchased the products or would have paid less. AC ¶¶ 91, 94–96. Adidas therefore cannot establish from the pleadings both full knowledge of the material facts and the absence of material mistake. Its assertion that Plaintiffs "do not allege any fraud, mistake, duress or coercion," Mot. at 18, is contradicted by the allegations of the pleading itself.

Defendant's reliance on *Dillon* is misplaced. There, the consumer repeatedly paid an expressly disclosed, fixed $5 late fee over a period of years and sought recovery on the theory that the disclosed fee exceeded the cable provider's actual administrative costs. *Dillon*, 100 N.Y.2d at 526. *Spagnola* subsequently distinguished *Dillon* in refusing to apply the voluntary payment doctrine at the pleading stage where the defendant's communications potentially obscured the factual basis for the challenged increases. 574 F.3d at 72–73. Here, Plaintiffs do not allege that Adidas separately identified a tariff surcharge, disclosed its amount, explained how that amount

was incorporated into retail pricing, or informed consumers that Adidas could recover the tariffs while retaining the corresponding tariff-driven price increase. Instead, the Complaint alleges that Adidas represented tariff-driven increases as reflecting real and unavoidable import costs and failed to disclose its retention of the resulting tariff-related benefit. AC ¶¶ 87–95. Thus, unlike the consumer in *Dillon*, Plaintiffs' theory is expressly predicated upon an alleged lack of full information concerning the economic basis and ultimate disposition of the challenged component of the price.

Additionally, the other cases cited by Adidas does not alter that conclusion. *Leder v. American Traffic Solutions, Inc.*, 630 F. App'x 61 (2d Cir. 2015), involved a plaintiff who knowingly chose to pay a specifically assessed traffic fine rather than challenge it. The challenged obligation itself was therefore known before payment. Similarly, the cases applying the doctrine where a charge was fully disclosed and the payor nevertheless chose to pay do not establish that a consumer has "full knowledge" merely because the final aggregate retail price is visible. New York courts distinguish precisely those circumstances from cases involving undisclosed facts relevant to determining whether an amount was improperly imposed. *See Spagnola*, 574 F.3d at 72–73; *BLT Steak*, 172 A.D.3d at 458–59; *Dubrow*, 157 A.D.3d at 621. Indeed, *DRMAK Realty LLC v. Progressive Credit Union*, 133 A.D.3d 401, 403 (1st Dep't 2015), on which the voluntary-payment doctrine is frequently invoked, expressly emphasized that the defendant there was "entirely aboveboard" about the disputed amount and that there was "no claim of fraud or mistake." Those circumstances are the opposite of what is pleaded here.

More fundamentally, Adidas's argument asks the Court to resolve disputed factual questions that cannot be decided from the pleadings, i.e. what information concerning the tariff-related price increases was communicated to consumers; what Plaintiffs understood those

increases to represent; whether the tariff-related component was discernible from the retail price; what Adidas knew concerning the treatment or recoverability of those tariff amounts; and whether Plaintiffs' payments were made with full knowledge of those facts. Those are precisely the types of questions the Second Circuit held could not be resolved on a motion to dismiss in *Spagnola*. 574 F.3d at 73. The same conclusion was reached in *Fishon*, where the court held to the extent to which the voluntary-payment doctrine might ultimately limit recovery to be a question for a later stage of the case. *Fishon*, 620 F. Supp. 3d at 106.

The Court therefore need not determine now whether the voluntary payment doctrine might ultimately limit some portion of Plaintiffs' recovery after a factual record has been developed. It needs only to determine that Adidas cannot establish its affirmative defense from the face of the Amended Complaint. Because Plaintiffs plausibly allege that they lacked full knowledge of material facts underlying the tariff-related price premium and that Adidas's conduct caused a material mistake concerning the nature and treatment of that premium, the voluntary payment doctrine provides no basis for dismissal under Rule 12(b)(6).

## CONCLUSION

For the forgoing reasons Plaintiffs respectfully submit that Defendant's motion to dismiss should be denied in its entirety.

Dated: August 21, 2026 Respectfully Submitted,

*/s/ Anthony Alesandro*
Anthony M. Alesandro, Esq.
Michael A. Tompkins, Esq.
**LEEDS BROWN LAW, P.C.**
134 Mineola Blvd, Floor 2
Mineola, NY 11501
Tel: 516-873-9550
Fax: 516-747-5024
aalesandro@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com

Paul J. Doolittle, Esq.*
Andre Belanger, Esq.**
**POULIN | WILLEY| ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
paul.doolittle@poulinwilley.com
cmad@poulinwilley.com
*Admitted *Pro Hac Vice*
***Pro Hac Vice* forthcoming

*Attorneys for Plaintiffs and Proposed Class*

**CERTIFICATE OF WORD COUNT**

I, the undersigned, do declare and affirm under penalty of perjury that pursuant to Local Civil Rule 7.1(c) that the above brief complies with the Court's Rules on Word Count, as checked via Microsoft Word and its word counting function, and that this document contains 7,179 words (excluding the cover page, caption, table of contents, table of authorities, signature block, and this certification).

Dated: August 21, 2026

Respectfully Submitted,

*/s/ Anthony Alesandro*

Anthony M. Alesandro, Esq.
Michael A. Tompkins, Esq.
**LEEDS BROWN LAW, P.C.**
134 Mineola Blvd, Floor 2
Mineola, NY 11501
Tel: 516-873-9550
Fax: 516-747-5024
aalesandro@leedsbrownlaw.com
mtompkins@leedsbrownlaw.com